NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0359n.06

Case No. 24-2064

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jul 23, 2025
KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff - Appellee, | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MICHIGAN |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| MARLON DARRELL WHITE, | ) | O P I N I O N |
| Defendant - Appellant. | ) | |

Before: BOGGS, McKEAGUE, and MATHIS, Circuit Judges.

**McKEAGUE, Circuit Judge.** A grand jury charged Marlon White with possessing a firearm and ammunition as a felon. *See* 18 U.S.C. § 922(g)(1). White moved to dismiss the indictment, claiming that § 922(g)(1) violated the Second Amendment as applied to him. The district court denied his motion, so he conditionally pleaded guilty. On appeal, White argues that the district court's analysis conflicts with this court's subsequent decision in *United States v. Williams*, 113 F.4th 637 (6th Cir. 2024). We conclude that even under *Williams*, § 922(g)(1) is constitutional as applied to him. Thus, we **AFFIRM** the district court's judgment.

**I.**

In December 2023, Kalamazoo public safety officers saw White enter the parking lot of a convenience store. As White walked into the store, the officers "observed the grip of a handgun protruding from his pants pocket." Final PSR, R.50 at PageID 217. After White drove away from

the store, the officers stopped his car because it had overly tinted windows and an expired registration. White initially denied that he had a firearm, but after confirming that he did not have a license to carry a concealed pistol, the officers searched his car. They found a SCCY CPX-1 9-millimeter pistol with an extended magazine and 14 rounds of ammunition underneath the front passenger seat.[1] During a search of White's person, the officers also recovered an additional magazine, five loose rounds of ammunition, and a suspected ecstasy pill. White later admitted that the pistol belonged to him.

Because White had multiple prior felony convictions, a grand jury charged him with one count of possessing a firearm and ammunition as a felon (i.e., the pistol and ammunition recovered from his car) and one count of possessing ammunition as a felon (i.e., the ammunition found on his person). *See* 18 U.S.C. § 922(g)(1).[2] White moved to dismiss the indictment, claiming that § 922(g)(1) violated the Second Amendment as applied to him. The district court denied White's motion, concluding that (1) the Second Amendment does not apply to felons, and (2) even if it did, the government could categorically disarm felons without violating the Constitution.

White entered a conditional plea to one count of possessing a firearm and ammunition as a felon, while preserving his right to appeal the district court's denial of his motion to dismiss. The district court sentenced White to 41 months in prison, and he timely appealed.

**II.**

On appeal, White reasserts his claim that § 922(g)(1) violates the Second Amendment as applied to him. We review his constitutional challenge de novo. *See United States v. Goins*, 118 F.4th 794, 797 (6th Cir. 2024).

---

[1] The record does not specify whether the firearm recovered from White's car was the same firearm that was protruding from his pocket when he entered the convenience store.

[2] The magistrate judge granted the government's motion for pretrial detention after finding, by clear and convincing evidence, that White was a danger to the community.

**A.**

The Second Amendment states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. "The Amendment protects an 'individual right to keep and bear arms' for self-defense." *United States v. Gore*, 118 F.4th 808, 811 (6th Cir. 2024) (quoting *District of Columbia v. Heller*, 554 U.S. 570, 595 (2008)). But "[l]ike most rights, the right secured by the Second Amendment is not unlimited." *Heller*, 554 U.S. at 626. Rather, "Congress can regulate firearm possession so long as doing so comports with the United States' historical tradition of firearm regulation." *United States v. Morton*, 123 F.4th 492, 495 (6th Cir. 2024) (citing *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 17 (2022)).

Section § 922(g)(1) is one such regulation. The statute prohibits "any person" convicted of "a crime punishable by imprisonment for a term exceeding one year" from possessing "any firearm or ammunition[.]" 18 U.S.C. § 922(g)(1). Prior to the Supreme Court's decision in *Bruen*, it was well-settled that laws prohibiting felons from possessing firearms—like § 922(g)(1)—were "presumptively lawful." *Heller*, 554 U.S. at 626–27 & n.26; *see McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010) (plurality opinion). *Bruen* did not renounce that presumption, but it held that regulations disarming individuals protected by the Second Amendment must be "consistent with this Nation's historical tradition." 597 U.S. at 17.[3] The Court subsequently explained that while a regulation must be "relevantly similar to laws that our tradition is understood to permit," it need not have a "historical twin." *United States v. Rahimi*, 602 U.S. 680, 692 (2024) (internal quotation marks omitted).

---

[3] While the majority opinion in *Bruen* did not address felon-in-possession laws, several Justices reiterated that the laws are presumably constitutional. *See* 597 U.S. at 72 (Alito, J., concurring) ("Nor have we disturbed anything that we said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns."); *id.* at 81 (Kavanaugh, J., concurring) ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill." (alteration in original) (quoting *Heller*, 554 U.S. at 626)); *id.* at 129–30 (Breyer, J., dissenting) (noting that the majority opinion "cast[s] no doubt" on the presumptive lawfulness of felon-in-possession laws).

In light of *Bruen* and *Rahimi*, this court reassessed the constitutionality of § 922(g)(1) in *Williams*. *See* 113 F.4th at 643–63. There, we recognized that felons are among "the people" protected by the Second Amendment. *See id.* at 649–50. Nevertheless, we held that "most applications of § 922(g)(1) are constitutional" because "our nation's history and tradition demonstrate that Congress may disarm individuals they believe are dangerous." *Id.* at 657. And while felons are not necessarily dangerous, we reaffirmed that § 922(g)(1) is at least "presumptively lawful." *Id.* at 663. Put simply, a defendant may be constitutionally disarmed under § 922(g)(1) unless he can show that he is not dangerous. *See id.* at 662–63.

To determine whether a defendant is dangerous, courts must evaluate his "unique circumstances." *Id.* at 660. This includes the defendant's prior convictions, as well as evidence of how those offenses were committed. *See id.*; *Morton*, 123 F.4th at 499. Violent crimes—such as murder, rape, assault, and robbery—are "at least strong evidence that an individual is dangerous, if not totally dispositive." *Williams*, 113 F.4th at 658. Moreover, crimes that "do not always involve an immediate and direct threat of violence against a particular person" may nevertheless "pose a significant threat of danger." *Id.* at 659 (citing drug trafficking and burglary as examples). In other words, a crime that "*poses a danger* to the community" or "*creates the possibility* of a violent confrontation" may still "justify a finding of danger." *Id.* (emphasis added) (citations omitted); *see also id.* at 663 (explaining that a person convicted of such a crime "will have a very difficult time, to say the least, of showing he is not dangerous"). A defendant raising an as-applied challenge to § 922(g)(1) carries the burden of proving that he is not dangerous. *See id.* at 662.

**B.**

Because the district court denied White's motion to dismiss before this court decided *Williams*, he argues that he was "deprived of th[e] opportunity" to show that he is not dangerous. Appellant Br. at 7; *see United States v. Black*, No. 23-1622, 2025 WL 1356614, at *2 (6th Cir. May 9, 2025) (noting that *Williams* "left open the possibility that § 922(g)(1) might violate the Second Amendment as applied to non-dangerous felons"). In his view, this court should at least

remand the case to the district court "to provide [him] with an opportunity to make the individualized showing" that he is not dangerous. Appellant Br. at 7.

To be sure, a defendant must have a "reasonable opportunity" to prove that he is not dangerous and thus falls outside of the "class-wide generalization" of § 922(g)(1). *Williams*, 113 F.4th at 661. But a defendant avails himself of that opportunity by raising an as-applied challenge, as White has done here. *See id.* And in cases where the district court rejected a defendant's as-applied challenge to § 922(g)(1) prior to *Williams*, we have repeatedly found that remand is unnecessary if the evidence in the record shows that the defendant is dangerous. *See, e.g.*, *United States v. Fordham*, No. 24-1491, 2025 WL 318229, at *5 (6th Cir. Jan. 28, 2025) (noting that "remand would be an inappropriate remedy" because the defendant "clearly falls within the category of individuals that may be lawfully disarmed"); *United States v. Henson*, No. 24-3494, 2025 WL 1009666, at *7 (6th Cir. Apr. 3, 2025) (same); *United States v. Williams*, No. 24-1244, 2025 WL 1089531, at *2 (6th Cir. Apr. 11, 2025) (same); *United States v. Williams*, No. 24-1409, 2025 WL 1136326, at *5 (6th Cir. Apr. 17, 2025) (same); *United States v. Poe*, No. 24-6014, 2025 WL 1342340, at *2 (6th Cir. May 8, 2025) (declining to remand the case because the defendant had an opportunity to "develop a record" and "present evidence that is not dangerous" prior to his sentencing (citation omitted)). We adopt the same approach here.

## C.

White's criminal history, along with the facts underlying his prior convictions, sufficiently demonstrate that he is dangerous.[4] In 2016, White was convicted of carrying a concealed weapon and sentenced to 18 months of probation under the Holmes Youthful Trainee Act. *See* Mich. Comp. Laws § 762.11. While on probation, White was convicted of gambling, possessing open intoxicants in a vehicle, and driving with a suspended license. His probation was ultimately

---

[4] White's presentence investigation report provided details of both his criminal history and the present offense. White did not object to the report at his sentencing, so we may consider its contents when evaluating whether he is dangerous. *See Williams*, 113 F.4th at 662.

revoked. In 2019, he was convicted of felony possession of methamphetamine and sentenced to two years of probation.[5] One year later—while still on probation—officers stopped White's car because it was unregistered. During a search of the car, officers found (1) a scale and several bags of marijuana in the driver's door pocket, and (2) a loaded firearm underneath the front passenger seat. In addition to violating his probation, White was convicted of carrying a concealed weapon and possessing a firearm as a felon. He was sentenced to one year in jail. In the present case, White again possessed both a loaded pistol and suspected drugs in his car. The National Integrated Ballistic Information Network linked White's pistol—which was reported as stolen—to a September 2022 shooting in Battle Creek, Michigan.

When evaluating White's "entire criminal record," there is little doubt that his prior conduct "inherently poses a significant threat of danger." *Williams*, 113 F.4th at 663. First, we consider the present offense. *See Fordham*, 2025 WL 318229, at *5. White—a convicted felon—possessed a stolen firearm linked to a shooting that took place the year before. *Williams* suggests that this alone may establish White's dangerousness. *See* 113 F.4th at 662 (asserting that a prior conviction for possessing a firearm as a felon, in which the defendant "agreed to stash a pistol that was used to murder a police officer," supports a finding of dangerousness).

Second, we turn to White's "multiple convictions for unlawfully possessing firearms," which demonstrate "his propensity for having weapons with him when he shouldn't." *Poe*, 2025 WL 1342340, at *3. The present case marks the third time in which White illegally kept a firearm in a car with him, "presumably for quick access and use." *Id.*[6] On at least two of these occasions, the firearm was loaded. *See id.* (noting that "[a] loaded gun is inherently dangerous"). And in one instance, White simultaneously possessed a loaded pistol, a scale, and several bags of marijuana.

---

[5] White fled from Kalamazoo public safety officers before he was apprehended. He was found with "two baggies of methamphetamine and a digital scale." PSR, R.50 at PageID 222.

[6] In the present case, White also carried a firearm into a convenience store.

*Cf. Smith v. United States*, 508 U.S. 223, 240 (1993) (recognizing that "drugs and guns are a dangerous combination").

Third, we look at the totality of White's criminal history. Between 2015 and 2020, White racked up 10 criminal convictions and three probation violations. He has two prior felony convictions for carrying a concealed weapon, and the present case is his second conviction for possessing a firearm as a felon. His repeat convictions "for the same dangerous conduct" and multiple probation violations "evince a likelihood of future dangerous conduct." *Goins*, 118 F.4th at 804. The record before us "leaves no doubt that he has no interest in following the law and will continue to create a risk of violent confrontation and place others at risk of immediate harm unless disarmed." *Poe*, 2025 WL 1342340, at *4.

Finally, we note that White "hasn't provided any evidence to show he isn't dangerous." *United States v. Garrison*, No. 24-5455, 2024 WL 5040626, at *2 (6th Cir. Dec. 9, 2024).[7]

In short, we conclude that White is dangerous, and he failed to meet his burden to prove otherwise. Thus, the district court correctly determined that § 922(g)(1) is constitutional as applied to him. *See Williams*, 113 F.4th at 662–63; *Poe*, 2025 WL 1342340, at *4 (affirming the district court's denial of an as-applied challenge to § 922(g)(1) on alternative grounds).

**III.**

We **AFFIRM** the district court's judgment.

---

[7] White asserts that none of his prior convictions were violent. That may be true, but as noted above, *Williams* recognized that certain crimes are indicative of dangerousness even if they "do not always involve an immediate and direct threat of violence." 113 F.4th at 659. Since then, this court has repeatedly found that non-violent crimes are dangerous when they put the public's safety at risk. *See, e.g.*, *Goins*, 118 F.4th at 804 (driving under the influence); *Williams*, 2025 WL 1136326, at *3 (fleeing and eluding); *Poe*, 2025 WL 1342340, at *3 (firearm convictions and flight from law enforcement while armed); *Fenderson v. United States*, No. 24-3643, 2024 WL 5347131, at *1 (6th Cir. Dec. 13, 2024) (order) (marijuana and heroin trafficking).